## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 26- |
| v. | : | DATE FILED: |
| ALEXA MEJIA | : | VIOLATION:<br>18 U.S.C. § 1344 (bank fraud – 1 count) |
| | : | Notice of forfeiture |

## INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1.      Defendant ALEXA MEJIA was a resident of Reading, Pennsylvania who did not have full time employment and did not own a functioning business.

2.      Wells Fargo Bank, National Association ("Wells Fargo") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, certificate number 3511.

3.      From in or about March 2021 to in or about June 2021, in the Eastern District of Pennsylvania, defendant

### ALEXA MEJIA

knowingly executed, and attempted to execute, a scheme to defraud Wells Fargo, and to obtain monies owned by and under the care, custody, and control of Wells Fargo by means of false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS**

It was part of the scheme that:

4.      On or about March 22, 2021, after being assigned an EIN number for her non-functioning business AM On Spot, Inc. ("AM On Spot"), defendant ALEXA MEJIA applied to register AM On Spot with the Pennsylvania Secretary of State.

5.      On or about April 12, 2021, defendant ALEXA MEJIA opened a business bank account for AM On Spot at a Wells Fargo branch in Shillington, Pennsylvania with an initial deposit of approximately $25.  In her application for the account, defendant MEJIA falsely stated that the company's "annual gross sales" for the period from January 1, 2021 through April 12, 2021 were $15,000, the company was in the "Wholesale Trade" industry, and its business was "selling electronic in bulk to sale [sic] online."  Although AM On Spot had no business of any type and had no income, the defendant fraudulently signed a certification stating that the "information provided in this Application is correct and complete."

6.      From on or about April 12, 2021, to on or about April 30, 2021, defendant ALEXA MEJIA deposited approximately $171.70 in the AM On Spot account, and withdrew approximately $161.31 from this account for personal expenses, resulting in an account balance of approximately $10.39 at the end of April 2021.

7.      On or about May 6, 2021, as a result of its email system being compromised, California Company A, a medical business based in California, sent a wire payment of approximately $189,403.32 to defendant ALEXA MEJIA's AM On Spot's Wells Fargo account.  As a result of this deposit, the balance in defendant MEJIA's AM On Spot account increased from approximately $131.81 on May 5, 2021, to approximately $189,457.78 on May 6, 2021.

2

8. On or about Friday, May 7, 2021, defendant ALEXA MEJIA withdrew approximately $9,500 in cash from the AM On Spot account at a Wells Fargo branch in the Eastern District of Pennsylvania. On Monday, May 10, 2021, defendant MEJIA made two cash withdrawals of approximately $7,000 and $4,000 from Wells Fargo branches in the Eastern District of Pennsylvania. These transactions were structured to avoid having the bank file Currency Transaction Reports ("CTRs"), which are required for cash transactions over $10,000.

9. On or about May 11, 2021, defendant ALEXA MEJIA caused an international wire transfer for $93,000 to be sent from her AM On Spot account to Chinese Company B, which purported to be a textile company based in China. Prior to initiating this wire transfer, defendant MEJIA had retained on her iCloud account a copy of a wire transfer record dated March 13, 2021, which showed a company that she did not own had previously sent a $94,660 wire from a different bank to Chinese Company B.

10. In or about May 2021, defendant ALEXA MEJIA maintained a fake invoice to California Company A for $189,403.22 and a false invoice from Chinese Company B for $93,300 in her iCloud account.

11. On or about May 12, 2021, when questioned by a Wells Fargo employee regarding the wire transfer from California Company A as well as defendant ALEXA MEJIA's subsequent wire transfer to Chinese Company B, defendant MEJIA falsely responded that the wire to Chinese Company B was for inventory, but did not provide a response for the reason California Company A sent funds to defendant MEJIA's AM On Spot account.

12. From on or about May 12, 2021, to on or about May 20, 2021, defendant ALEXA MEJIA used funds in the AM On Spot account at Wells Fargo to make various withdrawals, including the following: (i) expenditures of several thousand dollars for rental cars

and hotels; (ii) cash withdrawals in Philadelphia and Baltimore; (iii) transfers to her personal CashApp account and her then boyfriend in Florida's account; and (iv) payments to the Departments of State in Florida, Massachusetts, and Louisiana.  None of these withdrawals were for a legitimate business purpose.

13.     On or about May 20, 2021, when questioned by a Wells Fargo representative regarding activity in her account, defendant ALEXA MEJIA falsely stated that a friend had taken over the business and that she had been purchasing pens, pencils, and bluetooth devices for the friend.

14.     On or about June 3, 2021, defendant ALEXA MEJIA permitted an Internal Revenue Service tax refund intended for taxpayers KG and PG, which resulted from a cyber-attack on an accounting firm, to be deposited into AM on Spot's Wells Fargo account, despite the fact that neither defendant MEJIA nor AM on Spot was the named recipient of this fraudulent refund.

All in violation of Title 18, United States Code, Section 1344.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.    As a result of the violation of Title 18, United States Code, Section 1344, set forth in Count One of this information, defendant

**ALEXA MEJIA**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense, including, but not limited to, the sum of $126,352.21.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2).

**DAVID METCALF**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

ALEX MEJIA

INFORMATION

Counts
18 U.S.C. § 1344 (bank fraud – 1 count)
Notice of forfeiture

A true bill.

_____

Foreperson

Filed in open court this _____day,
Of _____A.D. 20_____

_____

Foreperson

Bail, $_____